IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHUNSTON S. SEAFORTH, BOTH VESSELS, C/O SHUNSTON SEAFORTH - LIVING MAN; AND VIVIAN C. ELITHORP, BOTH VESSELS, C/O VIVIAN ELITHORP - LIVING WO-MAN; | § § § § § § § § § | 5:24-CV-00576-FB-RBF |
| *Plaintiffs,* | § § § | |
| vs. | § § | |
| LOANCARE, LLC, AND/OR ITS SUCCESSORS, INDIVIDUALLY, AND IN THEIR OFFICIAL CAPACITY, AN ENS LEGIS BEING USED TO CONCEAL FRAUD; | § § § § § § | |
| *Defendant.* | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion to Dismiss. *See* Dkt. No. 6. All pretrial matters have been referred for resolution, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 4. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Defendant's Motion should be **GRANTED**.

### Factual and Procedural Background

Pro se Plaintiffs Shunston S. Seaforth and Vivian C. Elithorp's complaint alleges claims in connection with their acquisition of a home at 11314 Hill Top Bend, Helotes, Texas 78023, on April 11, 2022. *See* Dkt. No. 1. Cornerstone Home Lending served as Plaintiffs' original lender. *See* Dkt No. 6-1. Plaintiffs allege in part that, at some point shortly after the loan agreement was

finalized and signed, Cornerstone Home Lending assigned the Note to Ginnie Mae, with the interest held in the GNMA 2022-088 Trust ("Trust"), and that this assignment occurred without notice to the Plaintiffs or recording with the County Clerk. Dkt. No. 1 at 5. On March 4, 2024, Loancare, LLC, on behalf of Lakeview Loan Servicing, LLC, became the new loan servicer for Plaintiffs' loan. Dkt. No. 6-4. Alleging various improprieties in connection with these events, Plaintiffs filed the instant action on May 28, 2024.

On June 28, 2024, Defendant Loancare, LLC, filed its Motion to Dismiss. *See* Dkt. No. 6. At the initial pretrial conference and motion hearing held on August 13, 2024, Plaintiffs expressly declined the opportunity to amend their complaint in light of the Motion to Dismiss, and this Court entered a stay and administrative closure pending adjudication of the Motion to Dismiss. *See* Dkt. Nos. 13, 14.

## Analysis

Rule 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In reviewing the motion, the Court must and will "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quotation marks omitted). The Court, however, need not credit conclusory allegations or allegations that merely restate the legal

elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court does not consider evidence outside the pleadings and documents attached to them, except for documents that are attached to a motion to dismiss or response that are referred to in the live complaint and are central to it. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). Here, the Court considers the documents attached to Defendant's Motion to Dismiss, as they are referred to in the live complaint and central to Plaintiffs' claims. *See* Dkt. Nos. 6 (Mot.), 6-1 (Deed of Trust), 6-2 (Note), 6-3 (General Warranty Deed with Vendor's Lien) & 6-4 (Notice of Servicing Transfer).

"In addition to facts alleged in the pleadings . . . the district court may also consider matters of which it may take judicial notice." *Hall v. Hodgkins*, 305 F. App'x. 224, 227 (5th Cir. 2008). This includes public records. *See* Fed. R. Evid. 201; *Cox v. Richards*, 761 F. App'x. 244, 248 (5th Cir. 2019). The Court takes judicial notice of the Corporate Assignment of Deed of Trust, filed on June 19, 2024, in Bexar County, wherein MERS, as nominee for Cornerstone Home Lending, Inc., assigned the Deed of Trust for Plaintiffs' property to Lakeview Loan Servicing, LLC.[1]

### A.    Several Statutes Cited in the Complaint Are Inapplicable.

Throughout the complaint, Plaintiffs invoke inapplicable Texas and federal statutes. For example, Plaintiffs cite Texas Business & Commerce Code § 24.005(a)(1), which provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation [] with actual intent to hinder, delay, or defraud any creditor of the debtor[.]" Under this chapter, "creditor means a person . . . who has a claim," defined as "a right to payment or property." Tex. Bus. & Com. Code § 24.002(3)-(4). The statute

---

[1]    *Assignment*, County Clerk, The County of Bexar (June 20, 2024, 7:27 A.M.), https://bexar.tx.publicsearch.us/doc/208610618.

doesn't apply here because Plaintiffs aren't creditors in the loan transaction they allege; they don't have a right to payment or property against Defendants. Although the Court declines to expend scarce judicial resources explicating the many further examples of citations to inapplicable statutes, this example does provide insight into the scattershot approach taken by the complaint.

**B.      Plaintiffs Fail to State a Claim for Fraud.**

**1.**      *Plaintiffs have not plausibly alleged a common law fraud claim.* Plaintiffs also reference common law fraud. To the extent they seek to plead a claim for fraud, they fail.

In Texas, the elements of a fraud claim are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the trust and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the other party acted in reliance on the representation; and (6) the party thereby suffered injury. *Marsh v. JP Morgan Chase Bank, N.A.*, 888 F.Supp.2d 805, 814 (W.D. Tex. 2012), citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America*, 341 S.W.3d 323, 337 (Tex. 2011). Plaintiffs have not plausibly alleged that there was a false representation by their lender in the loan transaction for their property. According to their facially implausible theory, Cornerstone somehow materially misrepresented that "Plaintiffs were the borrower and not the lender" in the loan transaction.

Lacking a plausible theory of misrepresentation, Plaintiff cannot allege a common law fraud claim. Plaintiffs' claim that an alleged fraud renders their mortgage void and Loancare's enforcement of their obligation unlawful must therefore also fail. Further, Plaintiffs have not

alleged that Loancare was involved in the loan origination process, and so, to the extent that Plaintiffs bring fraud claims against Loancare, these claims should be dismissed.

      **2.**     *Plaintiffs have not plausibly alleged a fraud in the factum claim under the Uniform Commercial Code.* For the same reasons stated above, any claim Plaintiffs bring under U.C.C. 3-305 (Tex. Bus. & Com. Code § 3.305) has not been plausibly alleged, as Plaintiffs make no showing of "fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms." Tex. Bus. & Com. Code § 3.305(a).

      **3.**     *Plaintiffs fail to allege a fraud claim based on the securitization of their mortgage loan.* Plaintiffs allege that the securitization of their mortgage invalidates their loan or, alternatively, that Defendant Loancare made a material misrepresentation by not disclosing the securitization. Plaintiffs allege that "Cornerstone Home Lending, Inc., sold all ownership interest" in their debt "to Ginnie Mae" shortly after the property transaction was completed. Plaintiffs allege that the Trust purchased their debt and, further, makes a claim of rights "to all three parts" of the mortgage loan. Dkt. No. 1 at 6. The Trust additionally securitized their loan, despite allegedly only holding an interest in Plaintiffs' debt, and not in the Deed of Trust and Note.

      First, Plaintiffs assert that "the true character of the purported loan," *i.e.*, the loan's securitization, "was known by Defendants but not disclosed." Dkt. No. 1 at 8. Plaintiffs represent that there was consequently no meeting of the minds during the loan transaction, and thus the loan transaction was not a valid contract, and misrepresentations made to them fraudulently induced their participation in the transaction. *Id.* Plaintiffs do not plausibly allege that the

*possibility* of securitization was something they should have been informed about prior to entering into their loan nor that the securitization was harmful to their interests.

Second, the terms of Plaintiffs' Deed of Trust allow their Deed of Trust or Note to be sold without prior notice to the borrower. Dkt. No. 6-1 at 9. Plaintiffs' own agreement stated that Cornerstone and its successors in interest were not obligated to provide notice of a sale, such as the transfer to Ginnie Mae and the subsequent securitization.

     **4.**    *Plaintiffs' loan transaction had consideration.* The Court also rejects Plaintiffs' lengthy allegations that their original loan agreement lacked consideration and is therefore void, including as to Loancare. Plaintiffs allege that they received no value in exchange for their promissory note, which pledged repayment of their loan. However, as stated in the Note, Dkt. No. 6-2, and the General Warranty Deed, Dkt. No. 6-3, Cornerstone directly transmitted purchasing funds for the property to the outgoing owners, in exchange for the Plaintiffs' promise to repay such funds in the future. The Note promises to repay the same amount that the Grantor (the prior owner of the property) received "cash in hand paid by Cornerstone Home Lending, Inc." Dkt. No. 6-3 at 1. The original loan agreement, a standard purchase money mortgage, had valid consideration and is not void on such grounds.

     **C.**    **Plaintiffs Fail to State a Claim for Unconscionable Contract.**

Plaintiffs allege the aforementioned "lack" of consideration for their loan agreement, as well as improper bookkeeping and alleged accounting violations, render the loan contract unconscionable, and they ask the Court to find the agreement unenforceable. But Plaintiffs do not allege any elements of an unconscionable contract under Texas law or the U.C.C. Further, Plaintiffs cite a Texas Business & Commerce Code statute applicable to the *sale of goods* as the

basis of this claim. *See* Tex. Bus. & Com. Code §§ 2.102, 2.302. Plaintiffs allege no other plausible grounds to find the agreement unconscionable at the time it was made.

### D.    Plaintiffs Fail to State a Claim Based on an Improper Assignment.

Plaintiffs' third and final general claim is that an allegedly improper assignment gave the Trust rights to their loan, which then rendered the loan agreement void. Generally, borrowers lack standing to challenge an assignment like this because a borrower is not a party to an assignment. *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 342 (5th Cir. 2012). Importantly, "an obligor [here, Plaintiffs] cannot defend against an assignee's [here, Loancare] efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor," but "Texas courts follow the majority rule that the obligor *may* defend on any ground which renders the assignment void." *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (quotation omitted and emphasis added). "[F]acially valid assignments cannot be challenged for want of authority except by the defrauded assignor." *Id.* at 228. Thus, Plaintiffs cannot challenge the assignment of their mortgage unless they demonstrate the assignment voided the loan agreement, which they cannot do under the pleaded facts as discussed below.

### 1.    *Plaintiffs do not plausibly allege a claim based on a failure to record the transfer to the Trust.*

Plaintiffs allege generally that the securitization of either their Deed of Trust or Note was an assignment that should have been recorded but was not. Dkt. No. 1 at 17. Consequently, plaintiffs argue that federal law has been violated or, alternatively, that the lack of assignment gave the Trust an interest in the Plaintiffs' debt without ownership of either the Deed of Trust or Note as well, rendering the loan agreement void. *Id.* at 18.

Plaintiffs do not plausibly allege that the assignment to the Trust needed a recording to be valid. The property's Deed of Trust names Mortgage Electronic Registration Systems (MERS) as a beneficiary of the security instrument and grants MERS only legal title to the interests granted in the instrument, but with the right to exercise such interests. Dkt. No. 6-1 at 1, 2-3. "MERS does not loan money, hold the promissory note, service the mortgage, or collect payments," but rather "tracks servicing rights and mortgage ownership" between its members, including "residential mortgage lenders and servicers." *Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545, 549 (5th Cir. 2015).

The Deed of Trust therefore empowers MERS to exercise the rights granted to Cornerstone, including the right to assign the Deed of Trust or the Note. "[I]n Texas, a deed of trust gives both the lender . . . and the beneficiary (here, MERS) . . . the right to invoke the power of sale, even though it would not be possible for both to hold the note." *Id.* at 556 (internal quotation marks and citation omitted). MERS can assign the instrument among its members without recording the assignment. *See id.* at 549 ("MERS-member banks and entities can repeatedly assign a promissory note secured by [the] deed of trust to other MERS members without recording those transfers in a public-records office."); *see also id*. at 556 ("Transferring a promissory note among MERS members does not render the related deed of trust void, even if MERS, and not a MERS-member bank, is the beneficiary of the deed. As a result, MERS does not have to re-record a deed of trust to maintain a perfected security interest in the property."). Plaintiffs do not allege that Ginnie Mae or the accompanying Trust were not MERS members and thus do not plausibly plead a failure to record the assignment such that the loan agreement is void.

2.    *Plaintiffs fail to allege a claim under the Truth in Lending Act.* Plaintiffs also allege a claim under the Truth in Lending Act, which requires, in part, that within 30 days of sale or transfer of a mortgage loan to a third party, the new owner or assignee of the debt shall notify the borrower in writing of the transfer. 15 U.S.C. § 1641(g). Plaintiffs claim that this statute required a notification of the loan's alleged assignment to the Trust, but do not plausibly allege that the rights the Trust received rendered it a new creditor for their loan. Further, Plaintiffs do not show that Loancare is the proper defendant for such a claim. They also allege facts reflecting that the statute of limitations for damages under this provision has passed. *See* 15 U.S.C. § 1640(e) (providing a one-year statute of limitations on a claim for damages from the date of the alleged violation). When Loancare obtained its interest in Plaintiffs' loan, it did become the new owner of the debt. Plaintiffs were notified of this change in compliance with 15 U.S.C. § 1641(g). *See* Dkt. No. 6-4.

### E.    Plaintiffs Cannot Rely on the Split-the-Note Theory.

Sprinkled throughout Plaintiffs' complaint are allegations that the assignment of their Note to Ginnie Mae (*i.e.*, the Trust) or, alternatively, the securitization of their loan, split their Deed of Trust and Note, rendering the loan agreement void at that time. "Texas courts have rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). As such, the "theory that any securitization of [a] loan rendered the note and accompanying deed of trust unenforceable and discharged [the borrower's] obligations under them . . . [is] without merit." *Marban v. PNC Mortg.*, No. 3:12-cv-3952-M, 2013 WL 3356285, at *10 (N.D. Tex. July 3, 2013).

An allegation that Loancare has only been assigned either the Deed of Trust or Note, and therefore lacks standing to foreclose on the property, also fails. In addition to the above rejections of the split-the-note theory, it is also "inapplicable under Texas law where the foreclosing party is a mortgage servicer and the mortgage has been properly assigned. The party to foreclose need not possess the note itself." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013). Because Cornerstone's assignment of the Deed of Trust to Loancare was recorded by the Bexar County Clerk, the mortgage assignment was proper and Loancare has standing to enforce the loan agreement.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss, Dkt. No. 6, be **GRANTED**. Further, it is **ORDERED** that the preliminary injunction hearing scheduled for November 15, 2024, at 2:00 p.m. is **CANCELED**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise

excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      **IT IS SO ORDERED**.

      SIGNED this 14th day of November, 2024.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE